No. 45,631

In the Matter of the Estate of Louise A. Egy, Deceased. FLORENCE BESSMER; J. C. SUDERMAN, Executor of the Estate of Louise A. Egy, Deceased; J. C. SUDERMAN, Executor of the Estate of Charles Bessmer, Deceased; and BETHEL DEACONESS HOSPITAL ASSOCIATION, *Apellees,* v. THE HERTZLER RESEARCH FOUNDATION OF HALSTEAD, KANSAS, *Appellant.*

(469 P. 2d 319)

Opinion filed May 9, 1970.

*Arthur N. Turner,* of Branine, Ice, Turner and Ice, of Newton, argued the cause and was on the brief for the appellant.

*Arnold C. Nye,* of Nye and Nye, of Newton, argued the cause and was on the brief for Florence Bessmer, appellee.

*George A. Robb,* of Somers and Robb, of Newton, argued the cause and was on the brief for Bethel Deaconess Hospital Association, appellee.

The firm of Speir, Stroberg and Sizemore was on the brief for J. C. Suderman, Executor of the Estate of Louise A. Egy and J. C. Suderman, Executor of the Estate of Charles Bessmer, appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an action to construe a will insofar as it concerns the disposition of income earned following the death of the testatrix.

Louise A. Egy died on July 20, 1966. Her last will and testament

was admitted to probate and the estate is now under administration.

The will contains the usual introductory clause relating to payment of debts and expenses of administration. It then provides for two specific bequests which are not important here. Life estates were then provided in language as follows:

"FOURTH: All the rest, residue and remainder of my estate, of every kind and character, wheresoever situate, I give and bequeath to my brother, Charles W. Bessmer, and my sister, Florence Bessmer, share and share alike, FOR AS LONG AS THEY OR EITHER OF THEM SHALL LIVE, and the survivor shall have the full life estate; PROVIDED, HOWEVER, that my said brother and sister shall have only the income from my said estate."

The provision for disposition of the property after the life estate reads:

"FIFTH: SUBJECT TO THE LIFE ESTATE HEREINABOVE DEVISED in paragraph FOURTH hereof, I give, devise, and bequeath all property, of every kind and character, whether real, mixed or personal, and wheresoever situate and which I may own or in which I may have an interest at the time of my death as follows:"

Charitable bequests were made to certain charities including the appellant. Those named and the amounts are not material to this controversy.

The will then nominated an executor with power as follows:

"I hereby give and grant my personal representative full power and authority to control, manage, sell, pledge, lease for any purpose and for any length of time, or otherwise dispose of my estate and all or any part of my property for any purpose whatsoever, as he may see fit and without being required to obtain any order therefor from any probate or other Court, upon such terms, in such manner and at such times as to him seems most advantageous to the estate."

Charles W. Bessmer, the brother of the decedent, was 87 years of age at the time of the death of the testatrix and he passed away on January 19, 1967, some six months following the death of the testatrix. Florence Bessmer, sister of the decedent, was 89 years of age at the time of the death of the testatrix and is still living.

All of the income from the estate received by the executor has been co-mingled in one common account with other assets and all payments made by the executor have been paid from this one common account. A $15,000 partial distribution has been paid to Florence Bessmer.

Most of the assets of the estate consist of personal property in the form of corporate stocks and bonds.

Florence Bessmer filed a petition in the probate court in which

she claimed she was entitled to the income from the estate from the date of the death of the testatrix. She requested that the executor be directed to file a proper accounting of income and that he be directed to convert certain assets into cash for the purpose of making distribution of the income.

The petitioner based her claim on the provisions of the Revised Uniform Principal and Income Act, and further:

"Petitioner alleges that under the Will of the decedent herein and under the general substantive law of the State of Kansas, the general administration expenses in connection with the probating of the estate of said decedent including debts, funeral expenses, estate taxes, fees to the executor and his attorneys and court costs should be paid from the principal or corpus of said estate, and that Petitioner is entitled to the income from said corpus or principal from the date of death of said decedent."

The Hertzler Research Foundation of Halstead, Kansas, filed a written defense to the petition in which it alleged:

"Four. In the event the Court should find that the administration is subject to the application of the Revised Uniform Principal and Income Act of Kansas (K. S. A. 1967 Supp. 58-901 *et seq.*), then, for alternative defense, this respondent alleges:

"(1) The subject matter of said Act is not clearly expressed in its title in violation of Article 2, Section 16, of the Constitution of Kansas and inapplicable to the subject matter of this action; and,

"(2) the provisions of said Act are ambiguous, conflicting, and indefinite as to be incapable of application.

"Five. It is further alleged that, under the terms of the will of the decedent, the expenses of administration are to be first paid and income derived from the property during the course of administration is chargeable with such expense."

The Bethel Deaconess Hospital Association, a legatee under the will of Charles W. Bessmer, adopted the contentions of the petitioner. The matter was transferred to the district court for trial.

The trial concluded that the Revised Uniform Principal and Income Act has application to the administration of the estate and that the act was not invalid for any of the reasons stated. It also concluded:

"Under the terms of the will of Louise A. Egy, deceased, the Act does provide that the income shall be paid to the life tenants from date of death.

"Under the terms of the will of Louise A. Egy, deceased, the expenses incurred in connection with the settlement of the Louise A. Egy estate, including debts, funeral expenses, estate taxes, interest and penalties concerning taxes, family allowances, fees of attorneys and personal representatives and court costs are to be paid from the principal of the estate and not from the

income from the estate received by the executor as such terms 'principal' and 'income' are defined by said Act.

"Aside from the Revised Uniform Principal and Income Act, the general law of Kansas provides that the administration expenses noted in the previous sub-paragraph are to be paid from principal as distinguished from income, and further provides that a life-tenant is entitled to income from date of death.

"The will of Louise A. Egy, deceased, does not change alter or modify the general law of Kansas as set forth in the preceding subparagraph."

The trial court further concluded:

"That the life estate of petitioner, Florence Bessmer, and of Charles W. Bessmer, now deceased, is validly created by the terms of the will of Louise A. Egy, deceased, that J. C. Suderman, executor of the estate of Louise A. Egy, deceased; is hereby directed to file a proper accounting reflecting the allocation of receipts and disbursements in said estate as against principal and income pursuant to the conclusions of law as hereinbefore set forth; that said executor convert sufficient items of principal in said estate into cash for the purpose of making distribution of income to said life tenants and thereupon to make such distribution of income as reflected by said accounting and to do all other things necessary to put into effect the decision of this Court as set forth herein."

The Hertzler Research Foundation of Halstead, Kansas has appealed.

The appellant contends that the Revised Uniform Principal and Income Act (K. S. A. 1968 Supp. 58-901, *et seq.*) does not have application to the administration of the estate of Louise A. Egy because (1) the will empowered the executor to make disposition of the income, (2) the act applies only to trusts and (3) if the Act was meant to apply it is unconstitutional and void for the numerous reasons stated.

The appellant further contends:

". . . [T]hat: First, the executor is granted power by the will to use his discretion in application of such income; Second, if he does not have such power, then the general law of Kansas vests in him the title to the personal property and the income earned therefrom is subject to administration of the estate and may be applied to payment of debts, specific bequests, and the balance distributed to the residuary estate as the will provides."

The appellant makes some twelve separate contentions as to why the trial court erred in not applying the income accruing after the death of the testatrix to the payment of debts and administration expenses. We believe the issues can be reduced to two simple questions: (1) Does the will in question contain its own provisions for payment of debts and administrative expenses contrary to the rules set forth in the Revised Uniform Principal and Income Act and the general laws of Kansas? If not, (2) does

the rule for payment of debts and expenses as provided by the Revised Uniform Principal and Income Act coincide with the general substantive law of the state?

K. S. A. 1969 Supp. 58-914 provides in part:

"Except as specifically provided in . . . the will . . . this act shall apply to any receipt or expense received or incurred . . ."

We have stated that "a rule to which all others must yield is that a testator's intention will prevail if not contrary to settled rules of positive law or in violation of public policy." (*In re Estate of Works,* 168 Kan. 539, 213 P. 2d 998. See, also *In re Estate of Dees,* 180 Kan. 772, 308 P. 2d 90.)

If the will does designate the funds from which the debts and expenses of administration are to be paid, the designation will be recognized. However, we cannot find any such designation or inference in the will. We find nothing in Paragraph Fourth which indicates any such designation. Appellant suggests:

"In Paragraph EIGHTH of the will, the testatrix has gone to considerable lengths to assure her executor the full and complete management of her estate. While she did not specifically mention disposition of income, that authority must be incidental to the larger power for lack of such authority would be detrimental to the larger power granted and abrogate the interest of the testatrix. . . ."

We would suggest that broad powers to manage an estate and collect income is one thing, the disposition of the income is quite another.

Executors are frequently given broad powers in the management of estates during the administration. This is quite important where the assets consist chiefly of stocks and bonds. However, it is rare, indeed, when the executor is given the power to designate the recipient of the testator's bounty. We made this distinction in *In re Estate of Cline,* 170 Kan. 496, 503, 227 P. 2d 157, where we stated:

"The right of the executor or administrator to collect rents and earnings during the process of administration is one thing, the proper distribution thereof is another. The first pertains to possession of property during the process of administration, the second to its distribution to those entitled thereto. The statute [K. S. A. 59-1401] contemplates the possibility of such distribution prior to final settlement in that it provides '. . . or until delivered by order of the court to the heirs, devisees, and legatees.'"

We must conclude that the will does not designate the assets from which the debts and expenses are to be paid and we must,

therefore, look to the statutory law or the general substantive law of this state for the answer.

The revised Uniform Principal and Income Act (K. S. A. 1969 Supp. 58-904a) provides:

"(*a*) Unless the will otherwise provides and subject to subsection (*b*), all expenses incurred in connection with the settlement of a decedent's estate, including debts, funeral expenses, estate taxes, interest and penalties concerning taxes, family allowances, fees of attorneys and personal representatives, and court costs shall be charged against the principal of the estate."

This would dispose of the controversy but for the appellant's contention that the Act applies only to trusts created by wills and that the Act is otherwise unconstitutional for numerous reasons.

We next consider the trial court's conclusion that the general law of Kansas provides that debts and administration expenses are to be paid from principal as distinguished from income, and further provides that a life tenant is entitled to income from the date of the death of the testatrix. If the conclusion is correct, we need not consider appellant's claimed invalidity of the Revised Uniform Principal and Interest Act as the same result would be reached regardless.

We must approve the general rule as announced in 70 A. L. R. 637, which reads:

"The general rule that under a bequest of the residue of the testator's estate, or some aliquot part thereof, in trust to pay the interest or turn over the income to a beneficiary for life, the corpus over to another after the beneficiary's death, the life tenant is entitled to rents, issues, profit, or income, unless otherwise provided in the will itself, from the death of the testator, and the beneficiary is entitled to the use or income of the clear residue, as the same may ultimately be ascertained, from the death of the testator, has received strong support from a large number of courts; the necessary effect of the rule being that interest, profits, or income earned between the death of the testator and the conclusion of the settlement of the estate do not go to swell the corpus of the trust fund, but go to the beneficiary of the income."

In considering the application of income, it should matter not whether the property is placed in trust for the benefit of the life tenant or whether the life tenant is trusted with the preservation of the property for the benefit of the remaindermen.

The reason for the above rule is frequently declared to be that the life tenant ranks first in the consideration of the testator, and a contrary construction would take from the life tenant a portion of the income, add it to the corpus, and thus, at the expense of the life tenant, swell the estate of the remainderman, who, presumably,

stands second to the life tenant in the consideration of the testator. The reason is particularly applicable in the case before us where the funeral expenses and expenses incurred in administration alone amounted to $46,592.64.

Kansas has a statute giving an executor or administrator the right to possession of all property of the decedent, except homestead and allowances to the surviving spouse and children, during the course of administration. It reads:

" The executor or administrator shall have a right to the possession of all the property of the decedent, except the homestead and allowances to the surviving spouse and minor children. . . . He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or *until delivered by order of the court to the heirs, devisees and legatees.* . . ." (K. S. A. 59-1401. Emphasis supplied.)

In the case of *In re Estate of Cline,* supra, this court in dealing with income from the sale of gravel which accrued after the death of the testator, stated:

"Was appellee entitled to the proceeds from the sale of gravel mined and removed after decedent's death from a part of the land devised to her? The inventory of the estate included no gravel belonging to decedent's estate at the time of his death. It was stipulated the gravel was mined and removed after decedent's death by the lessee under a lease made by decedent in his lifetime and that the executor had collected the royalties thereon in the sum of $534.83. The court ordered the executor to pay these royalties to appellee.

"Appellants argue these earnings were personal assets to the estate and were subject to the payment of decedent's debts and costs of administration. . . ." (p. 503.)

It was held that the proceeds from the sale of sand was income belonging to appellee and not personal property which was subject to the payment of debts.

In *Gossard v. Condon,* 105 Kan. 714, 185 Pac. 1048, in considering the disposition of income where a bequest was made for maintenance and education, this court stated:

". . . The gift is of a stated portion of the testator's estate, with restriction on use and enjoyment. It is, however, expressly declared to be for maintenance and education; therefore, it bears interest from the date of the testator's death, the inference from the declaration being that the testator intended the benefit should not be postponed. The common-law rule of convenience, and statutory rules of the same character, relating to the time for liquidation of debts and legacies and the commencement of interest on ordinary legacies, do not affect the allowance of interest on legacies for maintenance. . . ." (p. 715.)

We conclude that aside from the application of the Revised

Uniform Principal and Income Act that the general substantive law of Kansas supports the proposition that the income from date of death of Louise A. Egy belongs to the life tenants and is not personal property to be used by the executor to discharge debts and expenses.

The judgment is affirmed.

APPROVED BY THE COURT.